Arnold R. VASBINDER,
Plaintiff–Appellee,

v.

Basil Y. SCOTT and Richard M. Switzer,
Defendants–Appellants.

No. 830, Docket 91–7884.

United States Court of Appeals,
Second Circuit.

Argued Jan. 30, 1992.

Decided Sept. 30, 1992.

Daniel Smirlock, Asst. Atty. Gen. of the State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., and Peter G. Crary, Asst. Atty. Gen. of the State of New York, of counsel), for defendants-appellants.

John Alden Stevens, Ithaca, N.Y. (Williamson, Clune & Stevens, of counsel), for plaintiff-appellee.

Before: WINTER, PRATT, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This appeal follows a jury trial solely on the issue of punitive damages. Defendants-appellants Basil Y. Scott and Richard M. Switzer appeal from a judgment of the United States District Court for the Northern District of New York, Thomas J. McAvoy, *Judge*, entered June 3, 1991 after a jury trial, that awarded plaintiff-appellee Arnold R. Vasbinder $150,000 in punitive damages against each defendant-appellant, and from a subsequent order of the district court entered August 27, 1991 that denied defendants-appellants' motion to reduce the awards of punitive damages. For the reasons that follow, we vacate the judgment and remand to the district court with the instruction to enter judgment in favor of Vasbinder in the amounts of $30,000 and $20,000 against Scott and Switzer, respectively, or at Vasbinder's option to conduct a new trial on the issue of punitive damages.

Background

The underlying facts of this litigation are set forth in our opinion deciding the initial appeal in this case, *Vasbinder v. Ambach*, 926 F.2d 1333, 1335–37 (2d Cir.1991). We summarize here only those facts necessary for resolution of the issue of punitive damages presented on this appeal.

At the outset of 1982, Vasbinder was a statewide coordinator of placement services for handicapped persons for the Office of Vocational Rehabilitation of the New York State Department of Education (the "OVR"). *Id.* at 1335. Switzer was Vasbinder's immediate supervisor; Switzer reported to Scott, the overall head of the OVR. *Id.* Up until that time, Vasbinder had always received excellent employment evaluations. *Id.*

In May 1982, while participating in an audit, Vasbinder discovered what he deemed to be improper duplicate billing and overcharging in the administration of a federally funded program. *Id.* at 1335–36. These apparent improprieties were thought by Vasbinder to involve individuals with close personal relationships to Switzer. *Id.* at 1336. In August 1982, Vasbinder reported his concerns to the Federal Bureau of Investigation ("FBI"), which opened an investigation into the matter. *Id.*

In October 1982, Vasbinder revealed his involvement with the FBI to Scott, and his relationship with Scott and Switzer became troubled. *Id.* at 1336–37. Vasbinder's performance evaluations by Scott and Switzer declined dramatically. *Id.* In December 1982, Vasbinder was stripped of some of his duties as statewide coordinator. *Id.* at 1337. On June 1, 1983, Vasbinder received a letter from the FBI reporting that "there is no indication of a violation of law which would merit federal prosecution." *Id.* Nine days later, Vasbinder was terminated as statewide coordinator and reassigned to a diminished position with a corresponding reduction in salary. *Id.*

Vasbinder then brought an action pursuant to 42 U.S.C. § 1983 (1988) against Scott and Switzer in the Northern District of New York, alleging that he had been discharged in violation of his First Amend-

ment rights. *Id.* The matter was tried before a jury, which rendered a verdict in Vasbinder's favor for backpay (later determined by the court to amount to $32,529.49), $50,000 for emotional distress, and punitive damages in an undetermined amount. *Id.* at 1338–39. On defendants' motion, the trial court vacated the award of punitive damages, holding that defendants' conduct was not outrageous and thus did not warrant the imposition of such damages. *Id.* Vasbinder appealed the district court's decision regarding punitive damages, and Scott and Switzer cross-appealed the award of compensatory damages. *Id.* at 1339.

This court reversed the judgment of the district court only insofar as it had set aside the jury's award of punitive damages. *Id.* at 1344. With respect to that issue, we held that:

> [I]t was not irrational or impermissible for the jury to infer that defendants' personnel actions toward Vasbinder were in callous disregard of his rights, and were intended both to deter other potential whistle-blowers and to disguise the retaliatory nature of their action from outsiders. It was surely within the jury's discretion to send a message, to Scott and Switzer and to others, that such retaliation is intolerable.

*Id.* at 1343. Because the district court had dismissed the punitive damages award without first having the jury make a finding as to the amount of punitive damages it would have awarded, the case was remanded for trial solely on the issue of punitive damages. *Id.* at 1344. The trial on remand consisted of a reading of the transcript of the prior trial and the introduction of additional evidence by the defendants concerning their personal wealth.

It was established at trial that Switzer was fifty-seven years old and employed as the executive director of the Bulova School in Queens, New York, an institution which offers vocational training to disabled adults. He receives a salary of $75,000 a year. Switzer also receives approximately $29,000 per year in retirement income from a state pension, which will be reduced to $27,000 at age sixty-two. At approximately that time, he will be eligible for an additional $30,000 per year from another pension source. Switzer's wife had recently been employed as a sales clerk at a department store, and her projected annual earnings were $7,500.

The Switzers' family assets include a $130,000 equity in their jointly owned family home and approximately $90,000 in savings. Mrs. Switzer also controls a bank account containing approximately $50,000. This money represents an inheritance received by Mr. Switzer that was transferred to his wife and is to be used to purchase property for the Switzers' children. The Switzers' liabilities include the mortgage on their home, $15,000 owed on an automobile, and an estimated $4,000 in annual real estate taxes. The Switzers anticipate the need to finance the remaining three years of their youngest child's college education.

The evidence as to Scott showed that he is sixty-six years old and hopes to retire in a year or two. He is currently employed as vice president for administration and finance at Kutztown University in Pennsylvania, where he earns approximately $77,000 a year. Scott also receives a New York State pension of approximately $44,000 a year, and has investments totalling approximately $360,000. Scott's wife has no retirement benefits. The Scotts jointly own, free from encumbrances, a condominium valued at $150,000 that is used as the family home.

After all the evidence was presented, the jury returned separate verdicts in the amount of $150,000 against both Scott and Switzer. Scott and Switzer then moved for judgment notwithstanding the verdict pursuant to Fed.R.Civ.P. 50(b) and 59 on the ground that the punitive damage awards were excessive and should be reduced. The trial court, while expressing sympathy for their position, denied the motion, deeming our opinions in *Hughes v. Patrolmen's Benevolent Ass'n,* 850 F.2d 876 (2d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), and *O'Neill v.*

*Krzeminski,* 839 F.2d 9 (2d Cir.1988), to require that ruling.

This appeal followed.

### Discussion

The defendants-appellants' liability for punitive damages having been decided by this court, *Vasbinder,* 926 F.2d at 1343–44, the only question on appeal is whether the amount of punitive damages awarded by the jury is excessive.

#### A. *Punitive Damages.*

■ An award of punitive damages should be reversed only if it is " 'so high as to shock the judicial conscience and constitute a denial of justice.' " *Hughes,* 850 F.2d at 883 (quoting *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978)). Although this is a stringent standard of review, we must remain cognizant that the purpose of punitive damage awards is to punish the defendant and to deter him and others from similar conduct in the future. *Smith v. Wade,* 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983). Thus, the function of appellate review of punitive damages is to make "certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Pacific Mut. Life Ins. Co. v. Haslip,* — U.S. —, —, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991); *see also Aldrich v. Thomson McKinnon Sec., Inc.,* 756 F.2d 243, 249 (2d Cir.1985) (punitive damages should not be awarded beyond amount reasonably necessary to secure purposes of such awards).

■ Accordingly, an award should not be so high as to result in the financial ruin of the defendant. *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 373 (2d Cir.1988). Nor should it constitute a disproportionately large percentage of a defendant's net worth. *Id.* Thus, while a defendant's conduct is obviously germane to the damages issue, " 'even outrageous conduct will not support an oppressive or patently excessive award of damages.' " *Brink's Inc. v. City of New York,* 546 F.Supp. 403, 413–14 (S.D.N.Y.1982) (quoting *Herman v. Hess Oil V.I. Corp.,* 379

F.Supp. 1268, 1276 (D.V.I.1974), *aff'd,* 524 F.2d 767 (3d Cir.1975)), *aff'd,* 717 F.2d 700 (2d Cir.1983). Further, because neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute "a windfall to the individual litigant." *Aldrich,* 756 F.2d at 249; *see also Ramsey v. American Air Filter Co.,* 772 F.2d 1303, 1314 (7th Cir.1985) (collecting cases). Finally, in applying these principles, we must engage in an independent and " 'detailed appraisal of the evidence bearing on damages.' " *Hughes,* 850 F.2d at 883 (quoting *Grunenthal v. Long Island R.R.,* 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L.Ed.2d 309 (1968)).

■ Reviewing the record in this case, we find the amount of punitive damages awarded by the jury, $150,000 against each defendant, to be excessive as a matter of law. The evidence presented at the second trial established that Switzer's net worth is in the neighborhood of $270,000, including his equity in his home. He earns an annual income of $75,000 and receives an annual pension of $29,000; after retirement, he will receive an annual pension of $57,000. The award of $150,000 in punitive damages exceeds fifty percent of the Switzers' total net worth. The dramatic reduction in the Switzers' wealth and retirement expectations "shocks the judicial conscience" because it far exceeds what is needed to deter the defendants or similarly situated individuals from engaging in the wrongful conduct addressed in this action.

■ The award of $150,000 against Scott is similarly excessive. Although Scott's financial resources are somewhat more extensive than Switzer's, the punitive damages award by the jury would consume approximately thirty percent of Scott's net worth, and over forty percent of his liquid assets. Scott testified that he was contemplating retirement. If the jury's award were upheld, he would suffer a massive loss of retirement income.

This is not to say that we condone the defendants' conduct or trivialize the harm that they caused Vasbinder. A jury found the defendants' actions in demoting Vasbinder for exercising his First Amendment rights to be so extreme and outrageous

that compensatory damages were inadequate to punish the wrongful conduct. *Vasbinder*, 926 F.2d at 1343. That finding was upheld by a panel of this court and cannot be challenged on this appeal. Nor do we slight the need to protect the free speech rights of government "whistle-blowers" or the importance of real deterrence to ensure that such employees continue to speak out on matters of public concern. We conclude, however, that the jury's award of punitive damages substantially exceeds that necessary to punish the defendants and deter similar conduct in the future, and therefore represents an unjustifiable windfall to Vasbinder.

In light of the evidence of the defendants' personal worth, and in view of their wrongful conduct, we believe that awards of no more than $20,000 as to Switzer and $30,000 as to Scott will satisfy the proper purposes of punitive damages. While significantly less than the jury's award, these amounts are still a substantial share of the defendants' assets, and will provide an ample deterrent against similar conduct in the future by the defendants or others.

Before leaving this issue, we briefly address the district court's conclusion that it was constrained by the law of this circuit to confirm the amount of punitive damages awarded by the jury. The district court was clearly disturbed by the size of the award, but stated that relief could not be granted because of this court's holdings in *Hughes* and *O'Neill*. We do not believe that these cases foreclose a determination that the punitive damages in this case were excessive.

In *Hughes*, the court upheld punitive damages awards of $175,00 against both the Patrolmen's Benevolent Association and an individual defendant. 850 F.2d at 879, 883. The defendants were found responsible for intentional infliction of emotional distress arising from a scheme to blame the plaintiff for a fellow officer's suicide. *Id.* at 878–79. After the court conducted a review of the evidence bearing on damages, it held that the jury's finding of malicious and offensive conduct should not be disturbed. *Id.* at 883. The court's brief discussion focused on the question whether the defendants' conduct was sufficiently blameworthy to justify punitive damages. No consideration of the defendants' net worth or ability to pay was undertaken in *Hughes*.

The personal wealth of the defendants was similarly not at issue in *O'Neill*. Although this court upheld jury verdicts for punitive damages of $125,000 and $60,000 against two individual defendants for the severe beating of the plaintiff by a police officer, 839 F.2d at 10, the court did not consider whether the amount of damages constituted a disproportionately large percentage of the defendants' net worth. *Id.* at 13–14. Indeed, the defendants' personal wealth was not put before the jury precisely because the City of New Haven accepted contractual responsibility to indemnify the defendants as to both compensatory and punitive damages.[1] *Id.* at 13.

In sum, *Hughes* and *O'Neill* did not address the issue which forms the basis of our decision, and accordingly are not controlling in this case.

### B. Remittitur Procedure.

As we have recently ruled, a court may not simply reduce an award of punitive damages, but must offer the plaintiff the option of a new trial on that issue. *Phelan v. Local 305 of the United Ass'n of Journeymen and Apprentices of the Plumbing & Pipefitting Indus.*, 973 F.2d 1050, 1064 (2d Cir.1992) (collecting cases); *see also Smith*, 861 F.2d at 375 (requiring district court to order new trial unless plaintiff agrees to reduced award of punitive damages); *Aldrich*, 756 F.2d at 249 (same).

In *Phelan*, we cited *Kennon v. Gilmer*, 131 U.S. 22, 29, 9 S.Ct. 696, 698, 33 L.Ed.

---

1. We do not consider the extent to which an indemnification agreement is relevant to the amount of punitive damages that may properly be awarded. We note the indemnification agreement in *O'Neill* only to buttress our conclusion that the *O'Neill* court did not address the issue whether the award was excessive in light of the defendants' net worth. In this case, by contrast, the State of New York has taken the position in its brief and oral argument on appeal that it may indemnify the defendants but is not required to do so, and has not made a commitment to provide indemnification.

110 (1889), as the leading authority in support of our ruling on this issue. *Phelan*, 973 F.2d at 1064. *Kennon v. Gilmer* makes clear that the option of a new trial when a jury determination is set aside as excessive derives from the protection accorded jury trials and factual determinations by the Seventh Amendment.[2] *See* 131 U.S. at 28–30, 9 S.Ct. at 698–99. This rule has not been uniformly followed in the circuit courts, nor has the impact of the Seventh Amendment on the question been uniformly recognized. *See Defender Indus., Inc. v. Northwestern Mut. Life Ins. Co.*, 938 F.2d 502, 507 (4th Cir.1991) (in banc) (collecting cases). In any event, the question is settled in this circuit.

### Conclusion

The judgment of the district court is vacated and the case is remanded with the instruction that the district court enter judgment against Scott and Switzer for punitive damages in the amounts of $30,-000 and $20,000, respectively, or at Vasbinder's option conduct a new trial on the issue of punitive damages.

**2.** The Seventh Amendment provides:
   In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.