Michael Antonio PATTERSON,
Plaintiff–Appellee–Cross–
Appellant,

v.

William BALSAMICO, in his individual
and official capacity, Defendant–
Appellant–Cross–Appellee,

County of Oneida, New York; Oneida
County Sheriff's Department; Daniel
Middaugh, in his individual and offi-
cial capacity as Sheriff; Peter Parava-
ti, in his individual and official capac-
ity as Undersheriff; William Chapple,
in his individual and official capacity
as Chief; John Does, in their individu-
al and official capacity as Employees
and Representatives of the County of
Oneida; Lieutenant Rende, in his in-
dividual and official capacity; and
Richard DePhillips, in his individual
and official capacity, Defendants.

Docket No. 05–0888–CV.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 29, 2005.

Decided: Feb. 27, 2006.

Peter Henner, Clarksville, N.Y. Appearing for Appellant.

A.J. Bosman, Utica, N.Y. Appearing for Appellee.

Before: McLAUGHLIN, SACK, Circuit Judges; KOELTL, District Judge.[1]

KOELTL, District Judge.

Defendant–Appellant–Cross–Appellee William Balsamico ("Balsamico") appeals from a judgment entered January 21, 2005, following a jury verdict in the United States District Court for the Northern District of New York (David N. Hurd, Judge).

The jury found Balsamico liable to Plaintiff–Appellee–Cross–Appellant Michael Antonio Patterson ("Patterson") for intentional infliction of emotional distress, and for having created a racially hostile work environment by participating in a workplace assault on Patterson.

For the reasons explained below, we affirm the judgment of the district court except its award of $20,000 in punitive damages against Balsamico and its award of attorneys' fees and expenses to Patterson in the amount of $18,885.00.

## I. BACKGROUND

### A.

The plaintiff, Patterson, is an African–American who was employed as a Correc-tions Officer by the Oneida County Sheriff's Department (the "Department") from February 1998 until February 1999. Patterson initially filed suit against the County of Oneida, New York (the "County"), the Department, and a number of individual defendants, including Balsamico. The complaint alleged causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. §§ 1981, 1983, 1985, and 1986; the New York Human Rights Law, N.Y. Exec. Law § 296; and additional state law claims. Specifically, Patterson alleged that he had been subjected to a racially discriminatory hostile work environment and that his employment had been terminated because of his race. Patterson alleged that between October 1998 and January 1999, he heard Department employees use racial slurs and make disparaging remarks about African–Americans on approximately 12 occasions. He further alleged that, in January 1999, Balsamico, a deputy named Richard De-Phillips,[2] and another unidentified deputy assaulted him, sprayed him with mace, covered him with shaving cream, and taunted him with racial slurs at the Oneida County Correctional Facility (the "jail"). In addition, Patterson challenged the Department's policies with respect to promotion, discipline, training and staffing as racially discriminatory, and alleged that his supervisor, Lieutenant Joseph Rende ("Rende"), refused to speak to him and refused to salute him although he saluted white officers. All defendants were initially represented by Bartle J. Gorman ("Gorman").

1. The Honorable John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

2. DePhillips, incorrectly identified in the Complaint as "Richard Phillips," was origi-nally a named defendant in this case. Patterson was unable to complete service of process upon DePhillips, and the claims against De-Phillips were dismissed for lack of personal jurisdiction.

On October 30, 2002, the district court granted the defendants summary judgment, dismissing the entire suit. On appeal to this Court, the district court's judgment was affirmed except insofar as it dismissed the claims against the individual defendants Balsamico and Rende under 42 U.S.C. §§ 1981 and 1983 and state law. This Court concluded that whether Balsamico and Rende had engaged in the conduct alleged, and whether the conduct was sufficiently severe to alter the conditions of Patterson's employment, were questions that could not be decided as a matter of law. *See Patterson v. County of Oneida*, 375 F.3d 206, 229–31 (2d Cir.2004) ("*Patterson I* ").

Following remand for trial against Balsamico and Rende, Gorman was replaced as counsel for those defendants. At trial, Balsamico was represented by David R. Diodati of DelBuono & Diodati ("Diodati"), and Rende was represented by David A. Bagley of Petrone & Petrone, P.C. ("Bagley"). Consents to the substitution of counsel were executed on September 17, 2004 and "so ordered" by the Magistrate Judge on September 20, 2004. From October 25, 2004 to October 28, 2004, a jury trial was held on Patterson's claims against Balsamico and Rende.

With respect to the January 1999 incident, Patterson testified at trial that the assault occurred around 1:00 a.m., when he was taking a break. He was about to pass through the automatic sliding door when an unknown person behind dark tinted glass in the jail's master control room instructed him to use another door instead. Patterson testified that, after he passed through the other door, Balsamico, DePhillips, and another, unknown, officer, sprayed him with shaving cream, struck him in the ribs, and sprayed mace in his eyes. Patterson specifically identified Balsamico as having participated in the assault, and testified that Balsamico said to him, "now you are a white man with an afro." Balsamico testified that he saw Patterson covered in shaving cream but did not touch him or say anything to him.

Patterson further testified that he felt humiliated and degraded as a result of the incident, and he felt leery of the majority of the officers with whom he worked. He testified that he felt stress, could not sleep, and had stomach problems. Patterson did not, however, report the incident, and there is no evidence that he received medical treatment as a result of it.

The Special Verdict Form was divided in two parts. The first five questions were directed to the alleged violations of 42 U.S.C. §§ 1981 and 1983 and the New York Human Rights Law. The jury found that Balsamico had participated in the assault and that racial discrimination was a substantial factor in Balsamico's conduct. The jury also found that the conduct was sufficient to alter the terms and conditions of Patterson's employment in that it created a hostile work environment. The jury found, however, that the hostile work environment was not a proximate cause of actual damages to Patterson and thus awarded only one dollar in nominal damages for the violations of Patterson's right to be free from a racially hostile work environment. The jury also found that Patterson was entitled to punitive damages against Balsamico.

With respect to the state law claim of intentional infliction of emotional distress, the jury found that Balsamico had intentionally inflicted severe emotional distress on Patterson and that the severe emotional distress was the proximate cause of actual injuries to the plaintiff. The jury awarded compensatory damages of $100,000 on this claim. The jury was specifically instructed that compensatory damages may only be awarded once to compensate the plaintiff

for losses sustained and that if the jury did not award the plaintiff damages for the claims under 42 U.S.C. §§ 1981 and 1983 and the New York Human Rights Law, but found that the plaintiff was entitled to damages, then the jury should enter the amount accordingly. The jury also found that Patterson was entitled to punitive damages on the state law tort claim.[3]

A subsequent trial to determine the amount of punitive damages was held in November 2004 before the same jury. At that time, evidence of Balsamico's financial condition was presented. The jury awarded $20,000 in punitive damages.

Balsamico moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure on various grounds. This motion was denied and the district court awarded the plaintiff attorneys' fees limited to work performed in prosecuting the case against Balsamico. After further submissions, the district court fixed the amount of attorneys' fees and expenses at $18,885.00 and entered judgment. This appeal followed.

**B.**

Balsamico raises a number of issues on appeal. First, he argues that plaintiff's claims under state common law were time-barred. Second, Balsamico argues that he was not acting "under color of state law" for purposes of 42 U.S.C. § 1983 and thus should not be subject to liability under that statute. Balsamico also argues that he is entitled to a new trial due to a conflict of interest on the part of Gorman, his original lawyer, who also represented the County of Oneida and other individual defendants in this case and who was replaced shortly before trial. Next, Balsamico urges that

the district court abused its discretion by granting Patterson's motion in limine to preclude the testimony of four witnesses identified shortly before trial. Balsamico further argues that the jury's verdict should be set aside because it was tainted by an improper summation by Patterson's attorney, and that both the compensatory and punitive damages awarded to Patterson were excessive.

On his cross-appeal, Patterson argues that the district court abused its discretion in reducing both the hourly rate and the number of hours in awarding Patterson attorneys' fees under 42 U.S.C. § 1988.

## II.DISCUSSION

### A.

#### 1.Statute of Limitations

Balsamico contends that Patterson's state law claim for intentional infliction of emotional distress, on which virtually all of the compensatory damages were awarded, should have been dismissed as time barred. He argues that the applicable statute of limitations is the one-year limit for intentional torts set forth in Section 215 of the New York Civil Practice Law and Rules, and that the complaint was filed on December 18, 2000, more than one year after January 1999, the date on which the incident in which Balsamico was alleged to have participated took place.

▇ Patterson responds that this defense was never raised in the district court and was therefore waived. *See Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank,* 392 F.3d 520, 526 (2d Cir.2004) (if an affirmative defense required to be pleaded under

---

**3.** The jury also found that Rende had engaged in the conduct alleged against him, and that racial discrimination was a substantial factor in his conduct, but concluded that Rende was not liable to Patterson because the conduct had not altered the terms and conditions of Patterson's employment.

Fed.R.Civ.P. 8(c) is neither pleaded nor tried with the parties consent, the defense is usually waived). As Balsamico notes, however, the defense was raised in the Answer and in Paragraph 10 of Gorman's Affidavit dated August 29, 2002 in support of the defendants' original motion for summary judgment.[4] This defense was therefore not "waived," because "the term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right." *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 61 (2d Cir.1999).

We conclude, however, that this defense was forfeited by Balsamico's failure to pursue it during the earlier appeal or after remand. "Forfeiture" is the failure to make the timely assertion of a right. *Id.* "Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here a defense, the term 'forfeiture' [rather than waiver] is more appropriate." *Id.*

Although the issue of the statute of limitations was raised as a basis for dismissing the intentional infliction of emotional distress claim in the initial motion for summary judgment, the district court never reached that defense. Having dismissed all of the federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. This Court vacated the dismissal of the Section 1981 and Section 1983 hostile work environment claims against Balsamico and consequently also vacated the dismissal of

Patterson's state law claims against Balsamico. Balsamico concedes that, although the district court had not ruled upon it, his trial attorney, Diodati, never raised the issue before the district court after the case was remanded. (Appellant Br. at 24.) Indeed, in completing the portion of the Court–Ordered Voir Dire form that requested "a brief description of each and every affirmative defense asserted," Diodati cited only Balsamico's argument that he was not acting under color state law.

Until this appeal, therefore, the defense was last raised in Gorman's August 29, 2002 affidavit, before the prior appeal. Although ample opportunity existed to reassert the limitations defense throughout the pre-trial activity in the case, the trial itself, and litigation of the post-trial motions, no reference was made to it. Balsamico therefore asks this Court to pass on an affirmative defense that was never determined in the trial court. Due to the extensive opportunities to litigate the statute of limitations issue that were foregone, we conclude that Balsamico abandoned this defense to Patterson's intentional infliction of emotional distress claim. *Hamilton,* 197 F.3d at 61.

It is true that this Court has discretion to decide the merits of a forfeited claim or defense " 'where the issue is purely legal and there is no need for additional fact-finding' or 'where consideration of the issue is necessary to avoid manifest injustice.' " *Krumme v. WestPoint Ste-*

---

**4.** Paragraph 24 of the Answer, under the heading "Sixteenth Affirmative Defense," states that any "state law claims … based on assault, battery, false imprisonment, libel, slander, [or] false words causing special damages are time barred by CPLR § 215(3)." The New York courts have held that a claim for damages for intentional infliction of emotional distress is subject to the one-year statute of limitations in C.P.L.R. Section 215(3). *See*

*Jemison v. Crichlow,* 139 A.D.2d 332, 531 N.Y.S.2d 919, 922 (1988); *Goldner v. Sullivan, Gough, Skipworth, Summers & Smith,* 105 A.D.2d 1149, 482 N.Y.S.2d 606, 608 (1984). Although the invocation of the statute of limitations defense could perhaps have been clearer, Patterson is incorrect in claiming that the issue was not raised in the Answer.

*vens Inc.*, 238 F.3d 133, 141–42 (2d Cir. 2000) (quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 1996); *see also Diesel v. Town of Lewisboro*, 232 F.3d 92, 108 (2d Cir.2000)). In this case, however, we decline to reach the statute of limitations issue because we conclude that there is no justification for the failure to pursue it after remand, at a time when the issue could have been resolved. We also cannot say that the jury would have, in the absence of this state law claim, awarded only nominal damages on Patterson's civil rights claims. Indeed, the jury was specifically instructed to avoid awarding duplicative compensatory damages for the same injuries. The jury could well have determined that it was more appropriate to award the compensatory damages for the claim of intentional infliction of emotional distress rather than for the claim of creation of a hostile work environment. Because of this uncertainty, vacating the judgment on the intentional infliction of emotional distress claim would present a substantial " 'risk of prejudice to' " Patterson. *Krumme*, 238 F.3d at 142 (quoting *Amcel Corp. v. Int'l Exec. Sales*, 170 F.3d 32, 36 (1st Cir.1999)). This risk of prejudice is a sufficient basis to decline to consider this forfeited defense.

### 2. Action Taken "Under Color of State Law" for Purposes of 42 U.S.C. § 1983

This Court noted, in the previous appeal in this case, that a question existed as to whether Balsamico was acting under color of state law within the meaning of 42 U.S.C. § 1983 during the January 1999

incident, and left that question open for consideration on remand. *Patterson I*, 375 F.3d at 230–31. The district court thereafter ruled, as a matter of law, that Balsamico acted under color of state law during the assault on Patterson, and Balsamico now challenges that determination. We need not decide whether the district court reached the correct conclusion on this issue, however, because a single factual issue—Patterson's claim of a hostile work environment—was presented to the jury under 42 U.S.C. § 1981 and the New York State Human Rights Law in addition to 42 U.S.C. § 1983. The jury's findings that Balsamico had participated in the January 1999 assault, that racial discrimination was a substantial factor in Balsamico's conduct, and that the assault was sufficiently severe to alter the terms and conditions of Patterson's employment established Balsamico's liability under all three provisions.

■ Balsamico did not object to the jury instructions or to the verdict form, and did not argue in the district court or in his initial brief before this Court that either the claim under 42 U.S.C. § 1981 or the claim under the New York Human Rights Law was legally insufficient.[5] Therefore, a holding that Balsamico was not acting under color of state law for purposes of 42 U.S.C. § 1983 would not affect Balsamico's liability under 42 U.S.C. § 1981 or the New York Human Rights Law, nor would it affect the nominal damages awarded, which are contingent on the injuries suffered by Patterson rather than the number of statutes under which Balsamico is liable.[6] 42 U.S.C. § 1981 and the

---

**5.** In his reply brief, Balsamico challenges for the first time the finding of liability under Section 1981 as well. He did not, however, raise this issue in his initial brief. This Court generally will not consider arguments raised for the first time in a reply brief. *See Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d

433, 438 n. 4 (2d Cir.2004); *Evangelista v. Ashcroft*, 359 F.3d 145, 155 n. 4 (2d Cir. 2004); *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir.2001).

**6.** Patterson's status as a prevailing party on his claim under 42 U.S.C. § 1981 is also a sufficient independent basis to entitle him to

New York Human Rights Law thus each provide an adequate alternative basis on which to affirm the judgment entered by the district court. Because our disposition of this appeal would not be affected by any possible resolution of the state action question, we need not reach the issue. *See Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 331 (2d Cir.2005) ("Naturally a court need not decide issues whose resolution it has determined can have no possible effect on the ultimate disposition of the case."); *see also Forsyth v. Fed'n Employment & Guidance Serv.,* 409 F.3d 565, 571 (2d Cir.2005) (declining to interpret a Local Rule of Civil Procedure where no interpretation of the rule would result in reversal).

### 3. Potential Conflict of Interest

■ Balsamico argues that he is entitled to a new trial because Gorman's joint representation of him and the County through the initial appeal in this case prejudiced him because of an inherent conflict of interest between Balsamico's interests and those of the County. He relies principally on *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir.1984), *amended on other grounds,* 748 F.2d 69 (2d Cir.1984), in which this Court required a new trial due to a conflict of interest arising from an attorney's joint representation of a county and its officers in an action brought under Section 1983. *Dunton* involved a lawsuit against a county and an individual county police officer who had physically assaulted the plaintiff upon finding him sitting in a car with the officer's wife. At trial, the same attorney represented both the county and the individual officer and argued that, at the time of the alleged violation, the officer had acted "as an 'irate husband'" rather than within the scope of his employment as a police officer. *Id.* at 907–08.

We noted that this line of argument served the county's interests, but was a poor defense for the officer, because "[a] municipality may avoid liability by showing that the employee was not acting within the scope of his official duties" while "[t]he employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties." *Id.* at 907. If the employee can show that the employee's actions were pursuant to an official policy, the employee can shift part of the liability to the municipality, and if the employee can also successfully assert a defense of qualified immunity, the entire liability may rest on the municipality because it cannot assert such a defense. *Id.* This Court concluded that the attorney's conflict of interest had prejudiced the individual officer while potentially providing "an improper benefit to the municipal defendants," and remanded the case for a new trial. *Id.* at 910.

■ In so holding, we noted that the potential for such a conflict of interest is inherent in Section 1983 cases. *Id.* at 907. In *Dunton,* however, this court declined to create a per se rule requiring disqualification whenever a municipality and its employees are jointly represented in a Section 1983 case. *Id.* at 908 n. 4. Rather, a case-by-case determination is required, and it is clear that the facts of this case do not rise to the level of those in *Dunton.* It is true that Gorman represented all defendants from the time this action was first filed on December 18, 2000 until shortly after this Court remanded the case to the district court. However, Gorman had successfully obtained the dismissal of all claims against all defendants in the district court, and there was no apparent conflict in the interests Gorman represented on appeal. Balsamico's position was that he

an award of attorneys' fees and costs under 42 U.S.C. § 1988.

did not participate in the January 1999 incident. That position was not inconsistent with the County's position. Moreover, on September 17, 2004, approximately five weeks before the commencement of trial on October 25, 2004, a new lawyer, Diodati, was substituted for Gorman to represent Balsamico. At trial, therefore, Balsamico was represented by counsel who had no potential conflict of interest.

This case is materially distinguishable from *Dunton,* where the same attorney represented both the municipality and an individual defendant at trial and where there was an actual conflict of interest in the positions that were of benefit to the two clients. This Court has found a new trial unnecessary even where municipal counsel actually represented individual officers employed by the municipality at trial where there was no actual conflict of interest. *Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir.1993). The defense attorney in *Rodick,* as here, had jointly represented the municipality and individual police officers prior to trial, and had successfully sought dismissal of the claims against the municipality. Although, unlike this case, the same attorney remained on the case on behalf of the individual defendants throughout the trial, this Court concluded that whatever potential conflict may have existed did not require a new trial because defense counsel advanced and argued all possible defenses available to the officers, including the qualified immunity defense. *Id.*

This case more closely resembles *Rodick* than *Dunton.* We required a new trial in *Dunton* because the defense attorney had in fact advanced arguments at trial that were directly contrary to the individual officer's interests. *Id.* at 907–08. A showing was therefore made that "counsel actively represented conflicting interests and that an actual conflict of interest adversely

affected [the defense] lawyer's performance" during the trial. *Gordon v. Norman,* 788 F.2d 1194, 1198 (6th Cir.1986). In contrast, this Court found in *Rodick* that the potential conflict had never materialized, and distinguished *Dunton* for precisely that reason. *Rodick,* 1 F.3d at 1350. It is clear that, as was true in *Rodick,* Balsamico cannot make the required showing of a sufficiently serious actual conflict of interest.

The particular conflict cited in *Dunton* as inherent in Section 1983 actions against municipalities, namely that the municipality can escape liability by arguing that its employees were not acting within the scope of official employment while the employee can escape liability by arguing the opposite, is simply not present here. At no time did Gorman assert that Balsamico was acting "outside the scope of his employment" during the January 1999 assault, as the attorney had in *Dunton.* Rather, Balsamico's defense, before and during trial, was that he had not actively participated in the January 1999 assault.

Nor can Balsamico argue that Gorman failed, because of his loyalty to the County, to present a qualified immunity defense on his behalf. Even after Gorman was replaced by Diodati, a wholly independent attorney, Balsamico never attempted to assert a qualified immunity defense. Balsamico would not have been entitled to qualified immunity in any event, because Patterson's equal protection claim arising out of that incident involved "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Jemmott v. Coughlin,* 85 F.3d 61, 67 (2d Cir.1996) (rejecting qualified immunity defense where a plaintiff alleged actions sufficient to establish a hostile work environ-

ment on the basis of race). Balsamico, moreover, testified at trial that he knew treating people differently on the basis of race was unconstitutional. Gorman therefore neither advanced an argument contrary to Balsamico's interest, such as that Balsamico was acting outside the scope of his employment, nor failed to present a valid defense for reasons of loyalty to his other client.

Balsamico argues that he was prejudiced at trial because Gorman drafted an affidavit when preparing the motion for summary judgment on behalf of all defendants, which Balsamico signed, in which Balsamico denied Patterson's allegations against him. This affidavit, though consistent with Balsamico's contention at trial that he did not participate in the assault on Patterson, did not mention that Balsamico had seen Patterson covered in shaving cream on the night in question, a fact that Balsamico disclosed during his direct testimony at trial. Balsamico argues that he is entitled to a new trial because the omission, which made him more susceptible to impeachment on cross-examination, may have been motivated by Gorman's desire not to implicate the County by presenting evidence tending to establish that the assault actually took place.

There are a number of difficulties with this argument. First, there is no evidence that Balsamico told Gorman that he had seen Patterson covered in shaving cream. To the contrary, Balsamico testified at trial that, at the time he signed the affidavit, he did not think that it was important enough to include. Balsamico's memo to Chief William Chapple, admitted into evidence at the trial, also denied that Balsamico participated in the incident but made

no mention of his having seen Patterson covered with shaving cream.

More importantly, as explained above, Balsamico was represented at trial by new counsel unaffected by any conflict of interest Gorman may have had. His trial attorney was fully capable of eliciting testimony to explain the difference between the affidavit and Balsamico's trial testimony and the reasons for such difference, and his trial attorney did elicit such testimony on the redirect examination. Balsamico therefore already had an opportunity, during the first trial, to raise any arguments with respect to the affidavit that would be available to him in a new trial. Furthermore, because the affidavit was a prior statement by a party offered against that party by the party opponent, it is unlikely that it would be excluded in a new trial. *See* Fed.R.Evid. 801(d)(2)(A).[7] We cannot conclude that Balsamico's argument with respect to the affidavit, or any other aspect of Gorman's joint representation of the County and Balsamico prior to trial, provides a basis for a new trial.

### 4. Motion in Limine to Preclude Defense Witnesses

Balsamico challenges the district court's decision to grant Patterson's motion in limine to preclude the testimony of defense witnesses identified for the first time shortly before trial.

After the case was remanded by this Court to the district court for trial, each party was required by Rule 26(a)(3) of the Federal Rules of Civil Procedure to disclose, "at least 30 days before trial," the identity of all witnesses that the party intended to "present at trial other than solely for impeachment purposes." Fed. R.Civ.P. 26(a)(3). Patterson filed a timely

---

**7.** Indeed, if any basis for excluding the affidavit existed, that also could have been raised by his trial attorney but was not. Any argument for exclusion of the affidavit was therefore waived.

Rule 26(a)(3) disclosure on September 24, 2004. It is uncontested, however, that Balsamico did not comply with Rule 26(a)(3). Rather, he first identified the four witnesses in question on Friday, October 15, 2004, ten days before the commencement of trial on October 25, 2004. Rende submitted his Rule 26(a)(3) disclosure on the same date.

On Monday, October 18, 2004, Patterson moved in limine pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure to preclude the testimony of certain of the witnesses named in Balsamico's and Rende's belatedly-filed disclosures. The district court, after giving counsel for Balsamico and Rende an opportunity to respond to the motion in limine, granted the motion on October 25, 2004, the first day of trial, except to the extent that Patterson sought to exclude the testimony of William Chapple, Chief of the Oneida County Sheriff's Department, who had been a named defendant in the original complaint.

Rule 37(c)(1) provides that any "party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness...not so disclosed." Fed.R.Civ.P. 37(c)(1).

■■■■■■ This Court reviews the district court's exclusion of testimony under Rule 37(c)(1) for abuse of discretion. *See Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997). In determining whether the district court acted within its discretion, this Court considers "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Id.*

■■■■ With respect to the first factor cited in *Softel,* Diodati explained that he had only recently been substituted as counsel and that he learned of the existence of these witnesses in one of the first conversations he had with Balsamico about the matter. As the district court noted, this explanation did not justify the failure to disclose those witnesses by prior counsel in a case that had been pending for years and in which there had been no disclosure of the existence of these witnesses or the substance of their testimony.[8] Moreover, even after Patterson submitted his Rule 26(a) disclosure on September 24, 2004, Diodati waited another three weeks before disclosing his witnesses, during which time, even by his own explanation, he should have been aware of their existence. Ultimately, as the district court found, the explanation was not adequate.

Balsamico argues that the testimony of the witnesses was important. He asserts that one witness would have established that Balsamico witnessed, but did not participate in, the January 1999 assault, and that two witnesses would have testified that he was not racially biased. He does not attempt to explain the importance of the fourth witness. However, Diodati never explained to the district court why these witnesses allegedly had important testimony. The district court indicated that it had no idea what the witnesses' testimony would be. While Diodati offered to explain on the day of trial what their testimony would be, he did not explain in any way why their testimony was important to Bal-

---

8. Balsamico attempts to link his failure to comply with Rule 26(a)(3) to the district court's failure to disqualify Gorman at an earlier date. We have already explained that there was no requirement that Gorman be replaced.

samico's defense. Indeed, the district court specifically gave Diodati the opportunity to explain why the witnesses should not be excluded. Under the circumstances, with no explanation to the district court of the importance of the testimony of these witnesses, this factor would not indicate that the district court abused its discretion in excluding the witnesses.

It is also clear that Patterson would have been prejudiced had the testimony of four witnesses only identified ten days before trial been allowed. No evidence from these witnesses was submitted in connection with the defendants' summary judgment motion. Rather, as the district court noted, Patterson first received notice of the witnesses, unaccompanied by any information concerning the nature of their testimony, shortly before trial.

Balsamico does not argue that Patterson would not have been prejudiced had the testimony of these surprise witnesses been permitted, but he does suggest that the district court should have postponed the trial. Though a continuance might have cured the alleged prejudice to Patterson, Balsamico cannot rely on this possibility when there is no indication in the record that he requested a continuance at the time. *See Wolak v. Spucci,* 217 F.3d 157, 161 (2d Cir.2000). Given the fact that, after almost four years of litigation, the case was set for trial within ten days of Balsamico's Rule 26(a)(3) disclosure, we cannot say that the district court was obligated to continue the trial on its own initiative.

The district court gave Balsamico's counsel the opportunity to explain the na-

ture of the testimony and the reasons for the late disclosure, reiterating its request just before ruling. No explanation of the nature of the evidence, nor any satisfactory explanation for the delay, was provided, nor was a continuance requested. The district court did not, therefore; abuse its discretion in refusing to allow the belatedly-identified witnesses to testify.

### 5. Summation by the Plaintiff's Attorney

Balsamico contends that he is entitled to a new trial because Patterson's attorney, A.J. Bosman ("Bosman"), irreparably tainted the proceedings with improper remarks in her summation. Bosman urged the jury to "send a loud message" that "we value civil rights" by awarding a high amount of damages. She further suggested that "these defendants and other defendants like them" might be deterred from similar conduct in the future if they remembered that "the last time we did something like this, it cost us 2.7 million dollars, and we had to go without part of our budget next year."

Balsamico argued in the district court, as he argues here, that the summation was improper because it suggested to the jury that any damages awarded would be paid by the County or the Sheriff's Department rather than by the individual defendants.[9] The district court, noting that Bosman's statements were "close," gave a limiting instruction that Balsamico and Rende had been "sued in their individual capacity" and that the "County of Oneida and the Oneida County Sheriff's Department are not defendants." The district court also explained that the jury's duty was to make

9. Balsamico also takes issue with Bosman's statement that Balsamico could have, but did not, offer witnesses to testify that he was not racially prejudiced. He wished to present such evidence, Balsamico argues, but was prevented from doing so by the district court's ruling precluding the testimony. There is no indication in the record, however, that Bosman was aware, prior to Balsamico's motion for a new trial, of the nature of the testimony the belatedly-identified witnesses were to have offered.

its determination with respect to the two defendants, Balsamico and Rende.

Because the objection was raised contemporaneously before the district court and passed upon, we review the district court's determination for abuse of discretion. *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir.2005). A trial court's discretion to "determine when the conduct of counsel is so improper as to warrant a new trial" is quite broad. *Matthews v. CTI Container Transp. Int'l, Inc.*, 871 F.2d 270, 278 (2d Cir.1989). "Not every improper or poorly supported remark made in summation irreparably taints the proceedings.... " *Id.* Rather, because attorneys are given "wide latitude in formulating their arguments" to the jury, "[r]arely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal." *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 271 (2d Cir.1999) (internal quotation marks omitted).

We cannot say that the district court abused its discretion in this case. The prompt curative instruction given was sufficient to advise the jurors that the County and the Department were not defendants. The district court could not have taken the further step of affirmatively instructing the jury that the County would not indemnify the individual defendants because that was not clearly established at the time and even today remains an issue disputed among the parties. Considered in light of the district court's instruction, given to the jurors immediately upon their return to the courtroom, the statements by Ms. Bosman did not create sufficient "undue prejudice or passion" to warrant a new trial. *Matthews*, 871 F.2d at 278.

### 6.Compensatory Damages

Balsamico argues that the amount of compensatory damages awarded by the jury was excessive. As explained above, the jury awarded $100,000 in compensatory damages on the state law claims of intentional infliction of emotional distress after concluding that the hostile work environment was not the proximate cause of Patterson's actual injuries. Balsamico argued, in his motion for a new trial before the district court, that the compensatory damages were excessive. By order dated December 10, 2004, the district court denied the motion in its entirety.

A federal court, in reviewing the amount of damages awarded on a state law claim, must apply New York law. *See Gasperini v. Ctr. for the Humanities*, 518 U.S. 415, 430–31, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); *see also Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 (2d Cir.2005). New York law provides that the appellate division "reviewing a money judgment ... in which it is contended that the award is excessive or inadequate ... shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c). This standard requires a more exacting review than the "shocks the conscience" standard generally applied by federal courts. *See Gasperini*, 518 U.S. at 424, 116 S.Ct. 2211.

However, " '[t]he proper role of the trial and appellate courts in the federal system in reviewing the size of jury verdicts is ... a matter of federal law.' " *Id.* at 437, 116 S.Ct. 2211 (quoting *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977) (per curiam)). Under federal law, "primary responsibility for application of § 5501(c)'s 'deviates materially' check" is "lodge[d] in the district court, not the court of appeals." *Gasperini*, 518 U.S. at 438, 116 S.Ct. 2211. In deciding a motion for remittitur, "the role of the district

court is to determine whether the jury's verdict is within the confines set by state law." *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 279, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (cited in *Gasperini,* 518 U.S. at 437, 116 S.Ct. 2211). This Court's function upon review of the district court's decision is limited to determining whether the district court abused its discretion. *Id.; see also Gasperini,* 518 U.S. at 438, 116 S.Ct. 2211; *Cross,* 417 F.3d at 258.

Balsamico's primary argument is that Patterson's injuries only amount to "garden-variety" emotional distress because the evidence of the harms suffered was limited to Patterson's testimony alone, and there was no evidence that any medical treatment was required. The New York courts, Balsamico argues, have limited compensatory damages in such cases to amounts below $30,000.

This Court, however, has recently sustained an award of $125,000 for "subjective distress" not accompanied by medical treatment. *Meacham v. Knolls Atomic Power Lab.,* 381 F.3d 56, 77–78 (2d Cir. 2004), *vacated on other grounds sub nom. KAPL, Inc. v. Meacham,* 544 U.S. 957, 125 S.Ct. 1731, 161 L.Ed.2d 596 (2005). The Court in *Meacham,* in reviewing state court decisions to determine whether the district court had abused its discretion, found that New York courts, applying the material deviation standard of C.P.L.R. § 5501(c), "vary widely in the amount of damages awarded for mental anguish," but have upheld emotional distress "awards of more than $100,000 without discussion of protracted suffering, truly egregious conduct, or medical treatment." *Id.* at 78. This Court reaffirmed *Meacham*'s holding on remittitur of damages in *Cross,* 417 F.3d at 258–59 & n. 4.

In this case, as in *Cross* and *Meacham,* the plaintiff offered testimony of his humiliation, embarrassment, and loss of self-confidence, as well as testimony relating to his sleeplessness, headaches, stomach pains, and burning in his eyes from the use of mace in the attack. *See id.* at 259; *see also Meacham,* 381 F.3d at 77. The damages awarded in this case are lower than those affirmed in *Meacham,* which did not involve a direct physical attack, and on the basis of our finding in *Meacham* that New York courts have upheld awards of over $100,000 in comparable cases, we conclude that the district court did not abuse its discretion in declining to grant a remittitur.

### 7. Punitive Damages

■ In addition to compensatory damages, the jury awarded $20,000 in punitive damages following the presentation of evidence concerning Balsamico's personal finances. Balsamico challenges these damages as also being excessive.

■ Because the punitive damages were awarded on both the federal and the state claims, this Court will not disturb the award unless it "shocks the judicial conscience." *Mathie v. Fries,* 121 F.3d 808, 817 (2d Cir.1997). Our application of this standard is guided by three factors identified by the Supreme Court: "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Lee v. Edwards,* 101 F.3d 805, 809 (2d Cir.1996) (quoting *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)); *see also Mathie,* 121 F.3d at 816.[10] We cannot

**10.** Although *Gore* was a case involving the limits imposed by the Fourteenth Amendment

conclude, based on our application of these factors alone, that the award of $20,000 in punitive damages exceeds the maximum permissible amount.

There can be little question that the January 1999 assault was a thoroughly reprehensible incident, particularly in light of its racial motivation. The Supreme Court has noted, moreover, that physical assaults generally demonstrate a higher degree of reprehensibility than nonviolent crimes. *See Gore,* 517 U.S. at 575–76, 116 S.Ct. 1589. This Court has likewise found that whether a defendant's conduct was violent and whether a defendant "acted with deceit or malice as opposed to acting with mere negligence" are relevant considerations in assessing the reprehensibility of conduct. *Lee,* 101 F.3d at 809.

The ratio between compensatory damages and punitive damages is acceptable; the Supreme Court has upheld a punitive damage award of "more than 4 times the amount of compensatory damages." *Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 23–24, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); *see also Gore,* 517 U.S. at 581, 116 S.Ct. 1589 & n. 33 (discussing proportionality between compensatory and punitive damages and noting that numerous federal statutes authorize punitive damages in some multiple of compensatory damages). In this case, the punitive damages awarded are a relatively small fraction of the compensatory damages, rather than a multiple thereof, and thus are not disproportionately large by comparison.[11]

The final *Gore* factor, the relationship between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases, also does not militate in favor of reducing the award. This factor demonstrates the Supreme Court's concern with according proper deference to " 'legislative judgments concerning appropriate sanctions for the conduct at issue.' " *Gore,* 517 U.S at 583, 116 S.Ct. 1589 (quoting *Browning–Ferris Indus.,* 492 U.S. at 301, 109 S.Ct. 2909 (o'Connor, J., concurring in part and dissenting in part)). "When penalties for comparable misconduct are much slighter than a punitive damages award, it may be said that the tortfeasor lacked 'fair notice' that the wrongful conduct could entail a substantial punitive award." *Lee,* 101 F.3d at 811 (citing *Gore,* 517 U.S. at 584, 116 S.Ct. 1589). In this case, Balsamico, a corrections officer, should have appreciated the gravity of a racially motivated assault on a fellow officer and should have understood that such conduct could have adverse economic consequences. *See id.*

 Our inquiry does not end, however, with the *Gore* factors. Rather, we must also consider Balsamico's personal financial situation. In reviewing an award of punitive damages, "we must keep in mind the purpose of punitive damages: to punish the defendant and to deter him and others from similar conduct in the future . . . .[O]ur task is to make certain that the punitive damages are reasonable in their amount and rational in light of their pur-

---

on state courts awarding punitive damages, this Court has recognized that the principles announced in *Gore* are equally applicable to our review of punitive damages awarded in a federal district court. *Lee,* 101 F.3d at 809 n. 2.

11. To the extent that the ratio between the punitive damages and the nominal damages of one dollar on Patterson's federal claims is

assessed independently of the compensatory damages for intentional infliction of emotional distress, we have noted that "in a § 1983 case in which the compensatory damages are nominal, . . .the use of a multiplier to assess punitive damages is not the best tool." *Lee,* 101 F.3d at 811; *see also Fabri v. United Techs., Int'l, Inc.,* 387 F.3d 109, 126 (2d Cir. 2004).

pose to punish what has occurred and to deter its repetition." *Id.* at 809 (quoting *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir.1992) (internal quotation marks omitted)). We have "recognize[d] that one purpose of punitive damages is deterrence, and that deterrence is directly related to what people can afford to pay." *Id.* at 813; *see also Vasbinder*, 976 F.2d at 121.

 This Court will not, therefore, affirm punitive damages awards that "result in the financial ruin of the defendant" or "constitute a disproportionately large percentage of the defendant's net worth." *Vasbinder*, 976 F.2d at 121. While we agree with the jury's assessment that punitive damages are warranted in this case, " 'even outrageous conduct will not support an oppressive or patently excessive award of damages.' " *Id.* (quoting *Brink's Inc. v. City of New York*, 546 F.Supp. 403, 413–14 (S.D.N.Y.1982) (internal quotation marks omitted)).

 "[I]n applying these principles, we must engage in an independent and detailed appraisal of the evidence bearing on damages." *Id.* (internal quotation marks omitted). Of course, "[u]nder well established precedent in this Circuit, 'it is the defendant's burden to show that his financial circumstances warrant a limitation of the award.' " *Mathie*, 121 F.3d at 816 (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373 (2d Cir. 1988)). Balsamico has met that burden, and we conclude that the punitive damage award of $20,000 is excessive in light of his personal finances.

The evidence presented at the trial on punitive damages established that Balsamico was earning an annual salary of approximately $37,632 at the time of the verdict. His 2003 W–2 form showed $45,821.57 in wages from the County, reflecting his salary plus paid overtime. Balsamico owned a home he purchased for approximately $51,000 and refinanced in 2003 for $87,000. He identified several bank accounts totaling about $470, and debt in excess of $5,000. He was married and had two children aged 14 and 11.

Balsamico argues correctly that his personal income and assets are considerably less extensive than those of the defendants in *Vasbinder*, against whom this Court limited punitive damages to $20,000 and $30,000 respectively. *See Vasbinder*, 976 F.2d at 120, 122. The award of punitive damages against Balsamico is excessive in light of his personal financial situation.

Moreover, while we have at times sustained higher punitive damage awards in arguably comparable cases, the defendant's financial circumstances were not at issue. For example, we noted in *Vasbinder* that "[n]o consideration of the defendants' net worth or ability to pay was undertaken in" *Hughes v. Patrolmen's Benevolent Association of the City of New York*, 850 F.2d 876 (2d Cir.1988). *Vasbinder*, 976 F.2d at 122. In *Lee*, we stated that the $75,000 award was "higher than we might otherwise approve" because the defendant's municipal employer had agreed to indemnify him. *Lee*, 101 F.3d at 813. An indemnification agreement likewise existed in *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir.1988). In *DiSorbo v. Hoy*, 343 F.3d 172 (2d Cir.2003), in holding that it was error for the district court to order the municipality to indemnify the defendant, we noted that if a new trial on punitive damages were held, the district court should admit evidence of the defendant's financial situation. *Id.* at 189 n. 9.

In light of the evidence of Balsamico's financial condition in this case, we conclude that an award of no more than $10,000 will provide a sufficient punishment and deter future conduct of this sort. We therefore remand for a new trial on punitive dam-

ages unless Patterson agrees to remit the portion of the punitive damages award that exceeds $10,000. *See Casey v. Long Island R.R. Co.*, 406 F.3d 142, 149 (2d Cir. 2005).

### B.

On his cross-appeal, Patterson urges that the district court abused its discretion in reducing the amount of attorneys' fees sought by Patterson under 42 U.S.C. § 1988. Patterson sought an hourly rate of $200 for 343.61 hours, plus $1608.72 in expenses, totaling $70,330.72.[12] The district court approved fees for 105.2 hours at $175 per hour, and $475.00 in expenses, for a total of $18,885.00.

 In awarding attorneys' fees, "[a] district court necessarily abuses its discretion if its conclusions are based on an erroneous determination of law, or on a clearly erroneous assessment of the evidence." *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir.2001) (internal quotation marks and citation omitted). The district court concluded that awarding fees for all the time sought was not appropriate because Patterson "obtained a verdict against only one of eight named defendants," and because Balsamico was "a secondary defendant" while the "majority of plaintiff's efforts...were directed to the other defendants."

 The Supreme Court has held that, in awarding attorneys' fees, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40

(1983); *see also Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir.2005). In a suit involving

> distinctly different claims for relief that are based on different facts and legal theories...[,] counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933 (internal quotation marks and citations omitted).

 This case involved claims against numerous defendants other than Balsamico. While many of the claims alleged racial discrimination in the workplace, they rested on distinct factual bases. There was little factual overlap in the allegations against Balsamico and those made against Rende, the County, or the other individual defendants who were granted summary judgment. It was therefore not error for the district court to determine that Patterson was not entitled to attorneys' fees for claims on which he was not the prevailing party. The district court did not, however, make sufficiently specific findings of fact or provide any explanation of how it determined the number of "reasonable hours related to" Balsamico. Indeed, although noting that "Plaintiff has

---

**12.** These figures are cited in the district court's order dated January 21, 2005. The time records submitted by Patterson's attorney in support of the application reflect 457.23 hours but purport to amount to only $70,331.64, inclusive of expenses, and appear to include time spent on work not related to the claims against Balsamico, for which no fee was sought. These total hours would exceed the amount sought at a rate of $200 per hour. On remand, the district court and the parties should determine the proper number of hours requested.

attempted to limit his application to work performed only with regard to defendant Balsamico," the district court eliminated at least two-thirds of the attorney hours sought. It is not clear which hours the district court concluded were not reasonably related to Balsamico, and for what reason.[13] Because we are unable, on the record before us, to determine whether the district court's assessment of the evidence was clearly erroneous, we vacate and remand for a more definite statement of how the district court reached its conclusions with respect to its award of fees and expenses. *See Kassim,* 415 F.3d at 256; *see also Orchano v. Advanced Recovery, Inc.,* 107 F.3d 94, 99 (2d Cir.1997). We further note that this Court's decision in *Patterson I* specified that "[e]ach party shall bear his or its own costs" incurred in connection with that appeal. *Patterson I,* 375 F.3d at 231. Such costs shall not, therefore, be included in any modified award granted on remand.

The district court should also reevaluate on remand its adoption of an hourly rate of $175 in light of the recent decision of the United States District Court for the Northern District of New York in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* No. 03–cv–502, 2005 WL 2346084, at *4 (N.D.N.Y. Sep.23, 2005), approving an hourly rate of $210 for experienced attorneys in the Northern District of New York. We note, however, that neither *Arbor Hill* nor prior cases awarding fees of $175 per hour are dispositive of the reasonable hourly rate. *See Farbotko v. Clinton County of New York,* 433 F.3d 204, 208–10 (2d Cir.2005). Rath-

er, 42 U.S.C. § 1988 requires that the district court, in addition to taking judicial notice of rates awarded in prior cases, consider any evidence the parties wish to present and determine the prevailing rate within the relevant community for attorneys of comparable skill and experience performing work on comparable cases. *See id.* If a further appeal is taken from the district court's new ruling, the appeal will be directed to this panel.

## CONCLUSION

We have considered all of Balsamico's arguments on appeal and have found them to be principally without merit. The judgment of the district court is therefore affirmed, with two exceptions. First, for the reasons explained above, we remand the case to the district court for a new trial on the issue of punitive damages unless Patterson is willing to remit $10,000 of the punitive damages awarded. Second, we vacate the district court's award of attorneys' fees and expenses and remand the case for more detailed findings of fact and a reasonable award of attorneys' fees and costs consistent with this opinion.

---

**13.** The Supreme Court noted in *Hensley* that "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933. In this case, however, it is manifest from the district court's order concluding that "the reasonable hours relating to proceedings against defendant Balsamico are 105.2 hours" that the district court endeavored to eliminate specific hours.