Perrim ANDERSON, Plaintiff,

v.

Vincent APARICIO and Maria McAuley, in their individual and official capacities, Defendants.

No. CV 09–1913(GRB).

United States District Court, E.D. New York.

Signed June 12, 2014.

Frederick K. Brewington, Cory H. Morris, Law Offices of Frederick K. Brewington, Hempstead, NY, for Plaintiff.

Arlene S. Zwilling, Hauppauge, NY, for Defendants.

## MEMORANDUM AND ORDER

GARY R. BROWN, United States Magistrate Judge:

Following the second jury trial in this excessive force case, in which a jury

awarded plaintiff Perrim Anderson ("Anderson") compensatory damages of $20,000 and punitive damages of $75,000 against defendant Vincent Aparicio ("Aparicio"), and returned a verdict in favor of defendant Maria McAuley ("McAuley"), both Anderson and Aparicio have filed posttrial motions seeking judgment as a matter of law or a new trial pursuant to Federal Rules of Civil Procedure ("Rules") 50 and 59. Despite the urging of the parties, this Court will not disturb the jury's liability determinations, as to do so would require the Court to impermissibly substitute its view of the credibility of witnesses and evidence for that of the jury, which acted reasonably and well within its province. As to the amount of the punitive damages assessed, I find that the jury's determination was reasonable and should similarly remain undisturbed. Plaintiff also seeks relief because the Court did not instruct the jury that any award would be indemnified by Suffolk County, but because the only evidence concerning defendants' financial condition was introduced by plaintiff, the issue of indemnification was properly excluded from the case. As such, the motions are DENIED for the reasons set forth herein.

## BACKGROUND

### Procedural History

Plaintiff commenced this action on May 6, 2009, by the filing of a complaint. *See* Compl., Docket Entry ("DE") [1]. On February 11, 2011, plaintiff filed an amended complaint. *See* Am. Compl., DE [15].

Jury selection was held on March 4, 2013, and the trial commenced on March 11, 2013, before the Honorable Joanna Seybert. *See* 3/4/2013 Minute Entry, DE [54]; 3/11/2013 Minute Entry, DE [63]. After deliberations, the jury returned a verdict on March 25, 2013. First Verdict Sheet, Ct. Ex. 5, DE [82]. In that verdict,

the jury found that plaintiff proved that Aparicio had (1) deprived plaintiff of a constitutional right, and (2) committed a battery upon plaintiff. *Id.* The jury awarded compensatory damages of $65,000 and no punitive damages. *Id.*

However, two problems emerged. First, although the jury had awarded compensatory damages, it had answered "no" to an inquiry about whether Aparicio caused plaintiff's injuries. *Id.* Second, plaintiff's counsel raised "a potential inconsistency in that the jury could have based its award of damages against Defendant Aparicio upon either the Section 1983 claim or the battery claim." Order for New Trial 3, Apr. 11, 2013, DE [89]. The Court instructed the jury to continue deliberations to clarify its verdict, and following continued deliberations, the jury returned a second verdict. *See* Second Verdict Sheet, Ct. Ex. 8. The second verdict resolved the causation issue, as the jury now answered that interrogatory affirmatively. *Id.* The jury changed its answer as to whether plaintiff had proved a battery, but still found a 42 U.S.C. § 1983 violation, and again awarded $65,000 in compensatory damages and no punitive damages. *Id.*

Plaintiff withdrew its objection concerning the potential inconsistency in the jury's findings, and urged the Court to accept the second verdict. Pl.'s Letter Acceptance of Verdict, Apr. 1, 2013, DE [85]. Defendants argued that the Court should either (1) accept the first verdict, or (2) declare a mistrial. Defs.' Letter Regarding Acceptance, Apr. 4, 2013, DE [86]. Judge Seybert determined that "the Court simply cannot harmonize how the jury could find excessive force in violation of the Constitution, but not a state law battery"; found substantial evidence of jury confusion; and rejected the jury's verdict. Order for New Trial 8–9. Judge Seybert concluded: "In-

consistencies and jury confusion, therefore, necessitate a new trial in this matter." *Id.*

On April 17, 2013, the parties consented to the jurisdiction of the undersigned for all purposes. Consent to Jurisdiction by U.S. Magistrate Judge, DE [92]. On November 4, 2013, a new jury was selected, and the second trial commenced on November 6, 2013. 11/4/2013 Minute Entry, DE [110]; 11/6/2013 Minute Entry, DE [111]. On November 14, 2013, the jury reached a verdict, finding defendant Aparicio liable for both excessive force and battery. The jury awarded plaintiff $20,000 in compensatory damages and $75,000 in punitive damages. Jury Verdict, DE [122]. The parties subsequently filed cross-motions for judgment as a matter of law on December 2, 2013. Defs.' Notice of Mot. for J. as a Matter of Law, DE [123]; Pl.'s Notice of Mot. for J. as a Matter of Law, DE [124]. This opinion follows.

**Facts Adduced at Trial**

Both parties move for relief based upon the contention that the jury's verdict is "against the weight of the evidence." Yet, remarkably, on these motions, neither party ordered nor cited any portion of the trial transcript. As such, in support of their motions, counsel rely upon factual summaries, which constitute their recollection and characterization of the testimony, drawing only scattered and fragmented support from several exhibits.

As can be imagined, in advocating for their clients, counsel present the Court with conflicting accounts of the testimony which are entirely unsupported by the record. For example, plaintiff's counsel states that, during his incarceration, "[a]t no time did Plaintiff display a threatening manner or suggest he would not comply with the deputy's requests." Pl.'s Mem. of Law in Supp. 8, Dec. 2, 2013, DE [124–1]. By contrast, defense counsel represents that "during the processing of incoming

inmates," Anderson became "disruptive," became "more verbally aggressive and agitated," and "pulled out of the deputy's grasp, squared off and clenched his fist." Defs.' Mem. of Law in Supp. 12, Dec. 2, 2013, DE [123–1]. Regarding damages, plaintiff represents that "Mr. Anderson's diagnosis included ... nasal fracture," while defendants insist that "[n]o medical evidence was presented that Anderson had any fracture of his facial bones." *Compare* Pl's Mem. of Law in Supp. 10 *with* Defs.' Mem. of Law in Supp. 13.

The stipulated facts are as follows:

1. Defendants Walker, Aparicio, and McAuley are all employees of Suffolk County, Suffolk County Sheriff's Department, and/or Suffolk County Correctional Facility.

2. On May 28, 2008, Plaintiff was arrested on an outstanding warrant, Docket No. 2006NA011759, and transported to Suffolk County Third Precinct for processing. Plaintiff was detained overnight at the Third Precinct.

3. On May 29, 2009, Plaintiff was transported from the Third Precinct to Suffolk County District Court, located at 400 Carleton Avenue, Central Islip, New York, for an appearance on the outstanding warrant.

Proposed Pretrial Order 4–5, June 27, 2012, DE [33]. The parties also generally agree that during Anderson's detention, he was removed from a cell, "brought to the ground" by Aparicio, McAuley, and other deputy sheriffs, and handcuffed to an "eyebolt" which is used to secure and isolate unruly prisoners. *See, e.g.,* Defs.' Exhibit C at 4, DE [125–3].

Plaintiff testified that Aparicio and other deputies punched him in the face and on the back of the head repeatedly and slammed him onto the ground, causing injuries, Tr. 11/7/2013 at 55:1–61:25, June 10,

2014, DE [132–2], virtually all of which defendants Aparicio and McAuley denied, Tr. 11/6/2013 at 168:1–169:14, June 10, 2014, DE [132–1]; Tr. 11/12/2013 at 66:13–68:21, June 10, 2014, DE [131–2]. Plaintiff produced photographs taken later that day documenting significant facial injuries, as well as a raft of medical documents recording at least some of the additional injuries he described. *See, e.g.,* Pl.'s Trial Exs. 2–8, 11–13, 33, 35. Plaintiff also testified, repeatedly, that Aparicio held him while McAuley delivered a kick to his lower back or tailbone; again McAuley denied having done so. Tr. 11/12/2013 at 67:1–68:21; *compare* Pl.'s Trial Ex. 9 *with* Defs.' Exhibit C at 1–4.

**Evidence of Earnings and Instructions related to Indemnification**

One particularly contentious issue during the trial was the presentation to the jury of evidence of Aparicio's wages and the indemnification of any punitive award by the County.[1] This case differs from most reported cases concerning similar issues because defendants did not initiate the effort to introduce evidence concerning their finances. Rather, it was plaintiff who introduced such evidence. On November 7, 2013, counsel to plaintiff filed an application memorializing his "request to illicit [sic] income/wealth information for the individual Defendants." Pl.'s Case Management Statement, DE [113]. In the same application, plaintiff's counsel requested that plaintiff be "permitted to present evidence of the fact of indemnification." *Id.* Plaintiff was permitted to introduce some limited evidence concerning defendants' income to the jury. *See, e.g.,* Tr. 11/8/2013 at 101:3–109:25, June 10, 2014, DE [134]. Aparicio's annual salary for 2009–2011, inclusive of overtime, was $117,647, $152,684, and $146,651. Tr. 11/8/2013 at 187:13–191:6, June 10, 2014, DE [131–1]. Objections by plaintiff's counsel were sustained as to any other questions about Aparicio's financial condition, such as the number of children he had and his prior salary at a different job. *Id.* The jury charge provided the following instruction concerning calculation of a punitive damages award:

> If you decide to award punitive damages, you should proceed with calm discretion and sound reason to fix an amount that would warn defendants and others not to engage in similar conduct, but you should . . . not set an amount so high as to result in financial ruin to a defendant.

Tr. 11/13/2013 at 169:1–7, June 12, 2014, DE [135]. Plaintiff's counsel did not object to this instruction. Tr. 11 / 14/2013 p. 19:1–27, June 12, 2014, DE [138].[2]

---

1. Defense counsel certified, prior to the commencement of trial, that the County would indemnify Aparicio and McAuley. *See, e.g.,* Letter Mot. to Bifurcate 2 n. 2, Oct. 25, 2013, DE [104]; Letter Mot. to Bifurcate Ex. A at 26:7–9, DE [104–1] ("Deputy McAuley and Deputy Aparicio have been indemnified by the county").

2. Given that defendants did not introduce evidence of financial circumstances, the instruction concerning "financial ruin" of a defendant *may* have been erroneous. *See Provost v. City of Newburgh,* 262 F.3d 146, 163–64 (2d Cir.2001). However, neither party objected to that instruction at trial, nor raise it on this motion. The only evidence of financial circumstances admitted were defendants' substantial gross wages, and information concerning defendants' expenses and other financial hardship was excluded. Additionally, for the reasons set forth below, given the relatively generous punitive damages award, no prejudice resulted. *See id.* (because "the $10,000 punitive damages sum approaches the limits of what we would deem consistent with constitutional constraints . . . Provost could not have been harmed by the disputed instruction").

After several hours of deliberation, the jury sent a note that asked, in relevant part, as follows:

> In the instructions as to punitive damages, it states "But you should not set an amount so high as to result in financial ruin to a defendant." Our question—Is Suffolk County paying the damages or does it come out of the defendants' pockets?

Court Ex. 4, Nov. 14, 2013, DE [121]. The Court held a conference with counsel, at which plaintiff's counsel again moved that the jury be instructed that the punitive award would be subject to indemnification. *See, e.g.,* Tr. 11/14/2013 at 7:2–8:25, June 12, 2014, DE [137]. That request was denied, and the Court provided the following instruction to the jury, over plaintiff's objection:

> I am instructing you that the defendants have been sued in their individual capacity, and that neither the County of Suffolk, nor any of its agencies, are defendants here. I am further instructing you that it is your duty to make any determination regarding punitive damages, if any, based solely on the financial condition of the two defendants. As you may recall, I permitted introduction of some evidence regarding the defendants earnings, which you may consider, if you deem it appropriate, in fashioning any award of punitive damages that you may reach.

Court Ex. 5; *see also* Tr. 11/14/2013 at 34:2–20, June 12, 2014, DE [139].

### The Jury's Verdict

Shortly after the Court provided the answer to the jury's inquiry, the jury returned a unanimous verdict against Aparicio. In that verdict, the jury found in plaintiff's favor on both the § 1983 and state battery claims. It awarded $20,000 in compensatory damages and $75,000 in

punitive damages. The jury also found that plaintiff failed to meet his burden of proof regarding either claim as to defendant McAuley. *See* Jury Verdict.

## DISCUSSION

### Standards for Evaluating Motions under Rules 50 and 59

■ Rule 50(a) provides for the entry of a judgment as a matter of law on any issue, before submitting the matter to a jury, where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Such motion may, as here, be renewed after trial under subsection (b) of that Rule. A court may grant a motion under Rule 50(b) "only if after viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of the non-moving party, it finds that there is insufficient evidence to support the verdict." *Fabri v. United Technologies Int'l, Inc.,* 387 F.3d 109, 119 (2d Cir.2004). Importantly, the trial court "cannot set aside the jury's credibility findings and cannot find for the movant based on evidence the jury was entitled to discredit." *Id.*

In *Weather v. City of Mount Vernon,* 474 Fed.Appx. 821 (2d Cir.2012), the Second Circuit described the "high standard" that a party must meet to overcome a jury finding in an excessive force case:

> Where, as here, a jury has deliberated in a case and actually returned its verdict, a district court may set aside the verdict pursuant to Rule 50 only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that

reasonable and fair minded men could not arrive at a verdict against him.

*Id.* at 822–23 (internal quotation marks and citations omitted).

■ Under Rule 59, a trial court "may, on motion, grant a new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." One ground invoked by both parties is the contention that "the verdict was against the weight of the evidence." *See generally* Pls.' Mem. of Law in Supp.; Defs.' Mem. of Law in Supp. The standard for evaluating such a motion

> differs in two significant ways from the standards governing a Rule 50 motion for judgment as a matter of law. Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.

*DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 134 (2d Cir.1998). Despite this more relaxed standard, "the court should only grant such a motion when the jury's verdict is egregious [and] should rarely disturb a jury's evaluation of a witness's credibility." *Id.*

**Motions for a Directed Verdict or a New Trial**

Both parties seek a new trial or verdict as a matter of law predicated upon the notion that the jury's verdict runs contrary to the weight of the evidence. These motions are quite easily dispatched.

Justice Stevens has compared citation to legislative history "as the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy v. Aniskoff,* 507 U.S. 511, 519, 113 S.Ct. 1562, 123 L.Ed.2d

229 (1993). Much the same can be said about counsels' presentation of the facts here: absent any citations of record, each attorney selectively offers their largely unsupported recollections and characterization of testimony, with only a few fragments of exhibits to suit particular arguments. "Courts are entitled to assistance from counsel, and an invitation to search [the record] without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material." *Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.,* 309 F.3d 433, 436 (7th Cir.2002) ("Judges are not like pigs, hunting for truffles buried in the record"); *see also Corley v. Rosewood Care Ctr., Inc. of Peoria,* 388 F.3d 990, 1001 (7th Cir.2004) ("we will not root through the hundreds of documents and thousands of pages that make up the record here to make his case for him").

■ Indeed, in the context of summary judgment, facts asserted by counsel "must be supported by citing to particular parts of materials in the record." Rule 56(c)(1); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("a party seeking summary judgment always bears the initial responsibility of ... identifying those portions of [record] which it believes demonstrate the absence of a genuine issue of material fact"). Of course, the parties seek to satisfy the much more exacting standards of Rule 50 and 59, yet fail to provide record evidence in a manner that meets even the Rule 56(c)(1) threshold. Where a party attempts to meet the heavy burden of overturning a jury verdict based upon the weight of the evidence, the failure to present the Court with record evidence to substantiate its claims—standing alone—provides sufficient basis to deny the motion.

■ Procedural insufficiency aside, the motions also clearly fail on the merits. In seeking a new trial or directed verdict as to McAuley, whom the jury found bore no liability, plaintiff urges the Court to construe the force admittedly used by McAuley as excessive. Pls.' Mem. of Law in Supp. 13–18. However, the jury determined that plaintiff failed to establish that the force used by McAuley in restraining him was excessive; this finding was well supported by the evidence. Counsel also references McAuley's inconsistent testimony as to when her hair color had been dyed from its natural blonde color to its present darker shade (an important point in connection with certain identification testimony). However, plaintiff's counsel exposed and effectively exploited this inconsistency during trial, and it was well within the jury's purview to evaluate the witnesses' credibility. Though McAuley's testimonial lapse was entirely inappropriate, I will not disturb the credibility determinations made by the jury, which responsibly and thoughtfully discharged its duty.

■ Aparicio contends that he is entitled to relief based on the unsupported contention that plaintiff's version of the facts was "implausible." Defs.' Mem. of Law in Supp. 17. Having heard the evidence, I am forced to disagree. Moreover, given the nature of the facts established here, which included Aparicio, without provocation, repeatedly punching plaintiff in the face and head, and causing substantial injury, counsel's contention that his actions were "objectively reasonable" and thus entitled to qualified immunity requires little comment. *See id.* It has been black letter law for decades that, in determining whether a prisoner has set forth a valid claim for excessive force under § 1983, the " 'core judicial inquiry [is] whether force was applied in a goodfaith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins v. Gaddy,* 559 U.S. 34, 39, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)) (reinstating excessive force claim for prisoner who had been "punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation' " (citation omitted)). In this case, drawing inferences in favor of plaintiff, there was *no* reason for the use of the force employed, let alone a good-faith reason. Therefore, Aparicio cannot seek the protection of qualified immunity.

### Amount of Punitive Award

■ Aparicio also challenges the amount of the punitive award, claiming that the $75,000 award is excessive. "Awards of punitive damages are by nature speculative, arbitrary approximations. No objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct. Nor is there any formula to determine the dollar amount needed to effectuate deterrence." *Payne v. Jones,* 711 F.3d 85, 93 (2d Cir.2013).

■ Where, as here, "the punitive damages were awarded on both the federal and the state claims, this Court will not disturb the award unless it 'shocks the judicial conscience.' " *Patterson v. Balsamico,* 440 F.3d 104, 120 (2d Cir.2006) (quoting *Mathie v. Fries,* 121 F.3d 808, 817 (2d Cir. 1997)). The Supreme Court has set forth "three guideposts" for evaluating the size of a punitive award: (1) "the degree of reprehensibility of the defendant's conduct"; (2) the punitive award's "ratio to the actual harm inflicted on the plaintiff"; and (3) "the civil or criminal penalties that could be imposed for comparable misconduct." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575–83, 116 S.Ct. 1589, 134

L.Ed.2d 809 (1996). "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *Id.* at 574, 116 S.Ct. 1589. These guideposts, the Court reasoned, reveal whether a defendant would have had fair notice of the magnitude of a potential penalty.

### 1. Reprehensibility

As to its reprehensibility, the assault of plaintiff by Aparicio was, on this record, plainly inexcusable, a disturbing demonstration of unprovoked violence by a law enforcement officer. "The Supreme Court has noted ... that physical assaults generally demonstrate a higher degree of reprehensibility than nonviolent crimes." *Patterson,* 440 F.3d at 121 (2d Cir.2006) (citing *Gore,* 517 U.S. at 575–76, 116 S.Ct. 1589). The Second Circuit has "likewise found that whether a defendant's conduct was violent and whether a defendant acted with deceit or malice as opposed to acting with mere negligence are relevant considerations in assessing the reprehensibility of conduct." *Patterson,* 440 F.3d at 121 (internal quotation marks omitted).

### 2. Ratio

The ratio between the compensatory damages found ($20,000) and the $75,000 punitive award is less than four-to-one. Such a ratio falls within acceptable limits. "[T]he Supreme Court has upheld a punitive damage award of 'more than 4 times the amount of compensatory damages.'" *Patterson,* 440 F.3d at 121 (2d Cir.2006) (quoting *Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 23–24, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)). Indeed, the notion of punitive damages measured as a small multiple of compensatory damages is sup-ported by centuries of jurisprudence and legislative pronouncements. *Gore,* 517 U.S. at 580–81, 116 S.Ct. 1589 ("Scholars have identified a number of early English statutes authorizing the award of multiple damages for particular wrongs [including] 65 different enactments during the period between 1275 and 1753 [that] provided for double, treble, or quadruple damages."). Thus, the ratio between the compensatory and punitive award here suggests that the punitive award is not excessive.

### 3. Penalties for Comparable Misconduct

The final *Gore* factor involves comparing the award to "civil and criminal penalties for comparable misconduct." *DiSorbo v. Hoy,* 343 F.3d 172, 187 (2d Cir.2003). Curiously, excessive force cases in this Circuit frequently compare awards to the penalties imposed for misdemeanors committed by private citizens. *See, e.g., Payne,* 711 F.3d at 101 (defendant's "conduct is criminalized in New York as a class 'A' misdemeanor [under] N.Y. Penal Law § 120.00"); *DiSorbo,* 343 F.3d at 187 ("The most relevant crime in New York would likely be assault in the third degree, which is a class A misdemeanor"); *Lee v. Edwards,* 101 F.3d 805, 811 (2d Cir.1996) ("Edwards' conduct could have exposed him to a charge of making a false statement, a class A misdemeanor [under Connecticut state law]").

The focus on state criminal provisions may be an artifact of the matters at issue in *Gore,* in which a state court jury improperly awarded punitive damages based upon nationwide conduct, including in states which did not prohibit the trade practices in question. *Gore,* 517 U.S. at 574, 116 S.Ct. 1589 ("The award must be analyzed ... with consideration given only to the interests of Alabama consumers, rather than those of the entire Nation").

In any event, decisions have uniformly expressed frustration with the use of state misdemeanor criminal penalties as a benchmark for evaluating an excessive force punitive award. *See, e.g., Payne,* 711 F.3d at 103 ("that New York classes Jones's conduct as warranting criminal prosecution tends to confirm the appropriateness of the imposition of a punitive award [but] tells little about the appropriateness of the amount of the award").

The comparison of state misdemeanor penalties to excessive force awards under § 1983 presents two problems. First, the conduct defined by these criminal statutes is qualitatively different when committed as an abuse of official authority. *DiSorbo,* 343 F.3d at 188 ("criminal penalties understate the notice when the misconduct is committed by a police officer"); *Lee,* 101 F.3d at 811 (same). Second, the relatively modest fines associated with state misdemeanor offenses do not provide a useful benchmark for evaluating punitive awards assessed against law enforcement officers. *Lee,* 101 F.3d at 811 ("the maximum fine of $2,000 gives little warning that the offense could entail a $200,000 civil award"); *DiSorbo,* 343 F.3d at 188 ("a maximum fine of $1,000 gives little warning that the action could result in a $1.275 million punitive damages award"). As a result, courts have endeavored to compare potential jail time to the amount of a punitive award, an apples-to-oranges exercise that provides little insight. *Payne,* 711 F.3d at 104 ("It is difficult to compare the possibility of jail time with a purely monetary punitive damages award, especially when the jail time is within the sentencing court's discretion"); *Lee,* 101 F.3d at 811 ("[a] year's imprisonment is certainly a serious sanction").

Where a jury imposes punitive damages for a violation of § 1983, the penalties imposed under federal criminal law for a similar offense provide an excellent metric for evaluation of excessiveness. And, indeed, federal criminal law offers a highly analogous provision for deprivation of rights under color of law, which provides in relevant part as follows:

Whoever, under color of any law ... subjects any person ... to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... and if bodily injury results from the acts committed in violation of this section ... shall be fined under this title or imprisoned not more than ten years, or both ...

18 U.S.C. § 242. Congress has authorized a fine for violation of this section of up to $250,000. 18 U.S.C. 3571(b)(3). Section 242 provides a better reference point than the state misdemeanor sections commonly used to evaluate § 1983 awards, as this legislative provision explicitly contemplates the commission of acts under color of state law. Clearly, this provision satisfies the notice concerns raised by *Gore,* as defendants have constructive notice that use of excessive force could, under certain conditions, lead to a fine of up to $250,000. *See Alla v. Verkay,* 2013 WL 5815796, at *24 (E.D.N.Y. Oct. 30, 2013) ("the assault would expose Verkay to ... up to ten years' imprisonment and a $250,000 fine under ... 18 U.S.C. § 242"). In that context, a $75,000 punitive award cannot be construed as excessive.

Also relevant here are several punitive damage awards reviewed and, in some cases, revised by the Second Circuit, as summarized below:

| Nature of Assault | Jury Award | Revised Award |
| --- | --- | --- |

| | | |
|---|---|---|
| Combative mental patient punched in the face 7–10 times and kneed in the back several times while in handcuffs. | $300,000 | $100,000 [3] |
| Handcuffed plaintiff struck 8–9 times in head with baton; Plaintiff remained conscious but was hospitalized | $200,000 | $75,000 [4] |
| Officer struck the plaintiff in the side of the head without warning, causing him to lose consciousness, pressed his gun against the plaintiff's head, implanted his knee into the plaintiff's back, and threatened to kill the plaintiff | $150,000 | $150,000 [5] |
| "Brutal" beating by several officers, who struck handcuffed plaintiff in face and head repeatedly (once with a blackjack) and dragged him by throat across detention area | $185,000 | $185,000 [6] |
| Off-duty officer choked plaintiff until she began losing vision, threw her to ground and struck her repeatedly. | $1.275 million | $75,000 [7] |

While each case stands on its own, it would appear that given the nature of the incident here, a $75,000 punitive damage award is within the range approved in these factually similar cases. More importantly, though, as it relates to the third *Gore* factor, the existence of these awards (and, of course, countless others) provides notice to defendant that the conduct at issue could result in financial penalties exceeding the $75,000 imposed here.

### Response to the Jury Question Regarding Indemnification

On this motion, plaintiff challenges the Court's refusal to instruct the jury—both initially and in response to the jury's question regarding indemnification—that any award against defendant would be indemnified by the County. Plaintiff argues that the Court should have advised the jurors that "Defendants in this case are being indemnified and will be having their damages (punitive and others) paid for by the County of Suffolk." Pl.'s Mem. of Law in Supp. 28–32.

■ It is clear that "a fact-finder can properly consider the existence of such an agreement as obviating the need to determine whether a defendant's limited financial resources justifies some reduction in the amount that would otherwise be awarded." *Mathie*, 121 F.3d at 816 (2d Cir.1997); *see also Scherer v. City of New York*, 2007 WL 2710100, at *10–11 (S.D.N.Y. Sept. 7, 2007) ("a fact-finder may consider the existence of an indemnity agreement in order to counterbalance any consideration of the defendant's ability to pay"). As Judge Bianco has explained, "*Mathie* addresses the situation where the existence of an indemnity agreement may be relevant to rebut a defendant officer's claim that he lacks financial resources for an award of punitive damages.... In other words, the indemnification evidence is a shield to rebut claims of limited resources by officers." *Hogan v. City of New York*,

---

3. *Payne*, 711 F.3d at 88, 101–102, 106. The nature of the assault here substantially resembles that in *Payne*, except without any provocation by plaintiff.

4. *DiSorbo*, 343 F.3d at 186–89 (citing *Lee*, 101 F.3d at 812).

5. *Id.* (citing *Ismail v. Cohen*, 899 F.2d 183, 185 (2d Cir.1990)).

6. *Id.* (citing *O'Neill*, 839 F.2d at 10).

7. *Id.*

2008 WL 189891, at *6 (E.D.N.Y. Jan. 18, 2008); *Kemezy v. Peters,* 79 F.3d 33, 37 (7th Cir.1996) ("The defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab").

■ Thus, where defendants do not introduce such evidence, indemnification is inadmissible. *Mathie,* 121 F.3d at 816 (where defendant "presented no evidence of his financial resources," indemnification could be considered "only [as a] reason for not adjusting the amount of the award to correlate with its impact on the defendant"); *Jean–Laurent v. Hennessy,* 840 F.Supp.2d 529, 550 (E.D.N.Y.2011) (precluding indemnification evidence and citing cases); *see also Provost v. City of Newburgh,* 262 F.3d 146, 163–64 (2d Cir.2001) (where "the defendants did not present evidence of their financial circumstances, [ ] the court therefore should not have instructed the jury to consider that issue in calculating a punitive award").

■ In this case, defendants—who agreed from the outset that the County would indemnify any punitive damage award—scrupulously avoided introducing any evidence of their financial circumstances. Over defendants' objection, plaintiff sought to "identify this officer's ... earning capacity with regard to [punitive damages]." Tr. 11/6/2013 at 35:18–22, June 10, 2014, DE [132]. The express purpose of this offer was to "give the jury a guidepost to evaluate punitive damages." Tr. 11/14/2013 at 3:5–14, June 12, 2014, DE [136]. Another purpose in introducing this evidence may have been, as described by defendants' counsel, to show that the defendants "make an awful lot of money for law enforcement." Tr. 11/8/2013 at 3:1–25, June 10, 2014, DE [131]; *cf.* Tr. 11/6/2013

at 35:1–36:25, June 10, 2014, DE [132] (plaintiff's counsel inquiring as to whether defendant took position for "higher pay").[8] Having succeeded in eliciting this proof, plaintiff then sought to introduce evidence—or have an instruction to the jury—regarding indemnification. *See* Pl.'s Case Management Statement.

■ The law is clear that a defendant may "open the door" to admission of an indemnity agreement by introducing evidence of financial constraint. It would turn the law on its head, however, for plaintiff to introduce evidence of defendant's wealth, and then use this as a basis to offer proof of indemnification that would otherwise be inadmissible.

Though plaintiff sought to introduce evidence to permit the jury to enhance its punitive damages award based upon indemnification by the County, I believe this would be inappropriate. As plaintiff acknowledges, the Second Circuit has repeatedly refrained from deciding "whether a fact-finder can rely upon the existence of an indemnity agreement in order to increase an award of punitive damages." *Mathie,* 121 F.3d at 816; *see also Vasbinder v. Scott,* 976 F.2d 118, 122 (2d Cir. 1992) ("[w]e do not consider the extent to which an indemnification agreement is relevant to the amount of punitive damages that may properly be awarded"). The question, then, remains open in this Circuit.

There are compelling reasons against informing jurors about municipal indemnification for the purpose of fixing a punitive damage award. The Supreme Court has noted that "[b]ecause evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive dam-

---

**8.** Indeed, Aparicio's earnings—which hovered around $150,000 for two of the three years at issue—far exceeds those of officers in similar cases. *See, e.g., Patterson,* 440 F.3d 104, 122 (2d Cir.2006) (defendant sheriff earned annual salary of $45,821.57).

ages that should be awarded, the unlimited taxing power of a municipality may have a prejudicial impact on the jury, in effect encouraging it to impose a sizable award." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that punitive damages may not be assessed against a municipality); *but see O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir.1988) (refusing to extend *Newport* to an excessive force case "since the City of New Haven has by its indemnification agreement voluntarily waived its immunity from payment of punitive damages").

In *Patterson v. Balsamico*, a case brought against individual officers, the Second Circuit encountered one attorney's effort to capitalize on the prejudicial risk identified in *Fact Concerts*, 453 U.S. 247, 101 S.Ct. 2748:

> Balsamico contends that he is entitled to a new trial because Patterson's attorney ... irreparably tainted the proceedings with improper remarks in her summation. [She] urged the jury to "send a loud message" that "we value civil rights" by awarding a high amount of damages. She further suggested that "these defendants and other defendants like them" might be deterred from similar conduct in the future if they remembered that "the last time we did something like this, it cost us 2.7 million dollars, and we had to go without part of our budget next year."

*Patterson*, 440 F.3d at 118 (holding that curative instruction sufficed to correct improper summation comments). In a similar case, "the jury was told that all damages would be paid by the City of Waterbury," and then returned a punitive award that "no fact or circumstance in the record of this case ... could remotely support." *Lee*, 101 F.3d at 813 (noting that because the defendant had agreed to

inform the jury about indemnification, even the substantially reduced award constituted "a punitive damage · award that is higher than we might otherwise approve"). Thus, the concern that a jury may fix an unrealistic punitive award, based upon a municipality's footing of the bill, counsels against admitting evidence of indemnification. *See Hernandez v. Kelly*, 2011 WL 2117611, at *6 (E.D.N.Y. May 27, 2011) (excluding indemnification evidence "because if jurors see a 'deep pocket' they may not carefully assess issues of liability/damages").

Moreover, an award based upon indemnification by a governmental entity does not serve the purpose of punitive damages, which is to "punish what has occurred and to deter its repetition." *Provost*, 262 F.3d at 164. By contrast, as the Supreme Court has observed, "an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort." *Fact Concerts*, 453 U.S. at 266–67, 101 S.Ct. 2748; *see also Payne*, 711 F.3d at 95 ("it is the taxpaying public that bears the brunt of an excessive [indemnified] award, which compounds the injury done by the tortfeasor").

 Finally, I find that plaintiff was not prejudiced by the refusal to instruct the jury that Suffolk County would pay any punitive award. The assumption that the · jury would have inflated its award represents a tenuous leap—while a jury might increase a punitive award backed by a government entity, the opposite could also be true. *See Lee*, 101 F.3d at 813 (stipulation to admit indemnity information "presumably reflects a calculation by the defense that the jurors would be tight-fisted with the taxpayers' money and a calculation by the plaintiff that a big verdict payable by a municipality could be more easily won at trial").

More importantly, as noted above, the amount of the punitive damages award, at nearly four times the compensatory award—though not excessive—"approaches the limits of what we would deem consistent with constitutional constraints." *Provost,* 262 F.3d at 164; *see also Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir. 1992) ("because neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute "a windfall to the individual litigant""). Thus, even assuming it would have been appropriate, plaintiff cannot demonstrate harm from the failure to inform the jury of indemnification by the County.[9]

## CONCLUSION

For all the reasons set forth above, the motions by plaintiff Anderson and defendant Aparicio for a judgment as a matter of law or for a new trial are DENIED.

---

**9.** Aparicio also argues that the damages determination should be set aside in favor of restoring the first jury's award of $65,000 in compensatory damages and no punitive damages. Based upon Judge Seybert's determination, I find that the first verdict was rendered a nullity and that there is nothing on this record or in the cases cited by defendant that would warrant a different conclusion.